UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
SUN-MING SHEU and
MING-CHEN HSU                          :

            Plaintiff,        :

    -against-                 :    06 CV 2158 (AR)

State of New York; Justice of NY    :
State Unified Court, Chief
Administrative  Judge Jonathan      :
Lippman in his official capacity    :
and Justice of the Supreme Court,   :
Queens County, Joseph G. Golia,     :
                                    :
            Defendants.
-----------------------------------X

## MEMORANDUM  IN  SUPPORT  OF  STATE DEFENDANTS' MOTION TO DISMISS

### Preliminary Statement

Plaintiffs pro se, Sun-Ming Sheu and Ming Chien Hsu, commenced this 42 U.S.C. § 1981 action against the State of New York, the Honorable Jonathan Lippman, Chief Administrative Judge ("Administrative Judge Lippman"), for the New York City Office of Court Administration ("OCA") and the Honorable Joseph G. Golia, Justice of the Supreme Court of the of the State of New York, Queens County, (collectively "State defendants").   Plaintiffs inter alia, allege that, Judge Lippman and Justice Golia violated their due process rights when Justice Golia presided over the underlying foreclosure and sale proceedings, Centex Home Equity v. Cheng, et al., Queens County Index No. 31307/01.  In this action, plaintiffs pro se seek judgment, from this Court, declaring the

orders issued by Justice Golia unconstitutional, enjoining enforcement of the orders in the foreclosure proceeding and, an order directing Justice Golia to recuse himself; an order directing Judge Lippman to assign another judge to preside over the matter and restore proceedings to the Court's trial calendar.

This memorandum is respectfully submitted on behalf of the State defendants, in support of their motion to dismiss the complaint as against them pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rules 12(b)(1) and (6). The motion to dismiss should be granted upon the grounds that: (1) the Court lacks subject matter jurisdiction over plaintiffs' claims pursuant to the <u>Rooker-Feldman</u> doctrine,[1] the Eleventh Amendment of the United States Constitution, and the doctrine of absolute judicial immunity; (2) plaintiffs' claims are barred in whole or in part, by the doctrine of <u>Younger</u> abstention;[2] and (3) because the alleged facts are insufficient to state a claim against the State defendants pursuant to 42 U.S.C. § 1981.

---

[1]   <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923).

[2]   <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

**Statement of Facts**

For the purposes of this motion to dismiss, all of the facts asserted in plaintiffs' complaint are assumed to be true. For the court's convenience, copies of the following public records: (1) decisions rendered by the Court, (Golia, J.), in the matter <u>Centex Home Equity v. Amy Cheng, et al</u>., Queens County Index No. 31307/01, are annexed as exhibits to the accompanying declaration of defendants' counsel, Assistant Attorney General Lisa Ghartey ("Ghartey Dec.").

**The Foreclosure Proceedings in Supreme Court, Queens County**

Mr. Ming-Chien Hsu is the owner of record of the subject property, 45-14 158 Street, Flusing, NY 11358, according to Court records he has never resided in the subject premises, since 1992, his brother, Sun-Ming Sheu, has continuously resided in the property. <u>See</u> Ghartey Dec., Exh. A, September 15, 2005 Decision, annexed thereto.  In 1992, the subject property was purchased by a corporation named Rainbow USA Corp., of which Mr. Sheu is the primary, shareholder. <u>Id</u>.  In or about 1994, title of the property was transferred from Rainbow Corp., to Mr. Sheu personally. <u>Id</u>.

On February 17, 1998, Mr. Sheu became a judgment debtor in Nassau County as the result of a default judgment being entered against him in the sum of $262,776, in the matter <u>Edro International Trading Ltd. V. Mascotte International Corp., etc. and Sunny Sheu a/k/a Sun Ming Sheu</u>, Ind. # 31608/97. <u>See</u> Ghartey

Dec., Exh A, at 2. During the pendency of this action, on or about February 25, 1998, Mr. Sheu transferred title of the property to his fiancée Ms. Amy Cheng. Id.   In June 1999, when the judgment creditor "Edro" docketed the Nassau County judgment in the Queens County Clerk's Office the property at issue was no longer titled in the name of Mr. Sheu. Id.

Mr. Sheu remained in residence at the premises. On or about April 1, 1998 Ms. Cheng obtained a mortgage through Abacus Federal Savings Bank in the amount of $195,000, the majority of the proceeds went to Mr. Sheu. Id, at 3.

Neither Ms. Cheng nor Mr. Sheu kept the mortgage current. On or about January 4, 1999 Abacus commenced foreclosure proceedings. Id.

Prior to the commencement of the Abacus foreclosure, a Power of Attorney was recorded, allegedly signed by Mr. Hsu which appointed, Mr. Gao to be his attorney-in-fact. Id. According to the power of attorney, Mr. Gao was appointed to act as Mr. Hsu's attorney-in-fact for the purpose of obtaining a mortgage and obtaining ownership to the subject premises. Id.

Two months after the Abacus foreclosure was commenced, the property was conveyed by Ms. Cheng to Mr. Hsu. Id. at 3.  A mortgage was obtained on behalf of Mr. Hsu in the amount of $228,750 from SMI Mortgage and was used to satisfy the outstanding

4

mortgage held by Abacus.  Neither Ms. Cheng, Mr. Sheu nor Mr. Hsu made a single payment to SMI Mortgage company. Id. at 3-4.

As a result of the default the assignee of the SMI mortgage, Chase Bank of Texas, commenced a foreclosure action against Mr. Hsu. Id. at 4.  It was during the pendency of the SMI mortgage foreclosure that the property was once again transferred. This transfer was made pursuant to the power-of-attorney obtained by Mr. Gao and involved obtaining a purchase money mortgage from Centex Home Equity on behalf of Ms.Cheng. Id. Some of the proceeds of this mortgage were used to pay off the defaulted SMI mortgage owed by Mr. Hsu. Id.  Mr. Hsu did receive a payoff and satisfaction of the mortgage from SMI. Id.

Centex commenced foreclosure proceedings against Ms. Cheng, Mr. Sheu and Mr. Hsu.  In defense of the foreclosure proceedings, Mr. Sheu on behalf of his brother Mr. Hsu, claimed that the power-of-attorney was a forged document, created without the consent or knowledge of Mr. Hsu. Id. at 5.

On or about May 18, 2005, a hearing was held before Justice Golia to determine whether the power-of-Attorney to Mr. Gao, was indeed forged. By decision and order dated September 15, 2005, the court held, the transfer of title from Mr. Hsu to defendant Amy Cheng was predicated upon a forged document without

5

the knowledge or consent of Mr. Hsu.[3]   The Centex mortgage from defendant Cheng was rendered void. As a result the court reached the issue of whether plaintiff, Centex, was entitled to equitable subrogation. The court determined that Centex satisfied the SMI mortgage out of the proceeds of its mortgage, and plaintiff has a valid equitable mortgage lien, under the doctrine of equitable subrogation. The court further determined that Mr. Hsu defaulted under the SMI mortgage prior to its being satisfied. See Ghartey Dec., Exhibit A, at 5-8.

The court directed that judgment be entered in favor of plaintiff, Centex, as against Mr. Hsu in the amount equal to the amount paid by plaintiff in satisfying the SMI mortgage, and any other related expenses.   Id.   The judgment became a lien on the property and satisfaction was to be made from Mr. Hsu's personal assets or the subject property. Id. 7-8.

On or about December 21, 2005, Mr. Sheu on behalf of his brother Mr. Hsu, moved to "return" the "stolen" property to defendant Hsu and reinstate the "jeopardized [sic] mortgage contract, and "return" the "stolen money" to plaintiff from "Midwest Financial." See Ghartey Dec., Ex. B, March 15, 2006 Decision, annexed thereto.  Mr. Sheu also moved for Justice Golia to recuse himself from presiding over the foreclosure action.  Id.

_____

[3] Ms. Cheng and Mr. Gao have been arrested and charged in the Criminal Court in the County of Queens as a result of these activities. See Ghartey Dec., Exh. A, at 5.

Plaintiff, Centex, cross-moved for leave to reargue and for an order from the court granting a judgement of foreclosure and sale foreclosing the equitable mortgage held by Centex. <u>Id</u>.  By decision and order dated March 15, 2006, the Court, denied the recusal motion, and granted plaintiff Centex, summary judgment on its claim for foreclosure of the equitable mortgage lien created when plaintiff satisfied the SMI mortgage and made payments of other advances related to the subject premises, the court further appointed a Referee to ascertain and compute the sums due and owing plaintiff. <u>Id</u>. at 3-4.

Plaintiffs did not appeal this decision.

**<u>Federal Complaint</u>**

Plaintiffs <u>pro se</u>, commenced this § 1981 action by filing a complaint on or about May 9, 2006. The complaint alleges violation of due process of law, and  discriminatory behavior on the part of the State defendants.  Plaintiffs seek a declaratory ruling that the decisions of the state court in the foreclosure and sale proceedings were unconstitutional, an injunction enjoining enforcement of the State court orders in the foreclosure proceeding, an order directing Justice Golia to recuse himself; and an order directing Judge Lippman to assign anther Supreme Court Justice to preside over the foreclosure proceeding. <u>See</u>  Compl., WHEREFORE Clause at p 19.

**ARGUMENT**

**POINT I**

**THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST THE JUSTICES**

**A.    The Rooker-Feldman Doctrine Precludes the District Court from Having Jurisdiction Over This Action**

The United States Supreme Court's recent decision in Exxon Mobil Corp. v. Saudi Basic Industries Corp.,544 U.S. 280(2005), examined the scope of the Rooker-Feldman doctrine. Pursuant to Exxon Mobil, the Rooker-Feldman doctrine is based on the "strictly original" subject matter jurisdiction of the federal district courts, which precludes district courts from sitting as appellate tribunals to review state court judgments. See Exxon Mobil, 544 U.S. at 292 citing, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 n. 16 (1983), citing, Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286 (1970) ("Lower federal courts possess no power whatever to sit in direct review of state court decisions"); Rooker v. Fidelity Trust Company, 263 U.S. 413, 416 (1923); see also 28 U.S.C. § 1257.  The doctrine applies where the state court judgment has resulted from a judicial proceeding (or one that was "judicial in character"), and the federal action would require the district court to decide questions that were already decided by the state court.  Feldman, 460 U.S. at

8

482-84, n.16;  Hachamovitch v. DeBuono, 159 F.3d 687, 694 (2d Cir. 1998).  As set forth in Feldman, the district courts "do not have jurisdiction ... over challenges to state-court decisions, in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486.  Even interlocutory state court orders may not be collaterally reviewed or set aside by a federal district court.  Campbell v. Greisberger, 80 F.3d 703, 707 (2d Cir. 1996); Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995).  The only permissible review is by the relevant state superior courts and/or the United States Supreme Court. Feldman, 460 U.S. at 482-84; 28 U.S.C. § 1257.

While Rooker-Feldman does not bar a general constitutional challenge to a statute or rule (see Feldman, 460 U.S. at 485-86; Hachamovitch v. DeBuono, 159 F.3d at 693-94), no such claim is raised here.  Plaintiffs are simply presenting challenges to orders and decisions  the state court entered in the underlying foreclosure proceeding, disguised as a constitutional violation. See Compl. ¶ 6.  Plaintiffs are seeking from this Court an order determining the validity of the underlying foreclosure orders, this is just the type of determination barred by the Rooker-Feldman doctrine.

Plaintiffs' complaint presents a typical Rooker-Feldman situation, as defined  by the Supreme Court in Exxon Mobil, "a loser in state court invites a federal district court to over turn a

state-court judgment." <u>Exxon Mobil</u>,544 U.S. at 286.   Plaintiffs are calling upon this Court to exercise appellate-jurisdiction over the state court judgments rendered prior to their commencing this federal action.   Pursuant to the <u>Rooker-Feldman</u> doctrine, such appellate jurisdiction over state court judgments is limited to the United States Supreme Court.   <u>Exxon Mobil</u>, 544 U.S. at 292. Accordingly, this action, which seeks a declaratory judgment and injunction enjoining enforcement of the challenged state court orders, can not be maintained and this Court should enter judgment dismissing the complaint pursuant to the <u>Rooker-Feldman</u> doctrine.

**B.**        **PLAINTIFFS' CLAIMS  ARE BARRED BY**
           **THE ELEVENTH AMENDMENT TO**
           <u>**THE UNITED STATES CONSTITUTION**</u>

     Plaintiffs' claims are barred by the Eleventh Amendment to the United States Constitution. <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984).  Although the Eleventh Amendment does not bar a claim against a state official for prospective injunctive relief, "[u]nder <u>Pennhurst</u>, [plaintiffs are] barred from obtaining relief in federal court based on allegations that the state or its officials have violated state law." <u>Society For Goodwill to Retarded Children Inc. v. Cuomo</u>, 737 F.2d 1239, 1248 (2d Cir. 1984); <u>Edelman v. Jordan</u>, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361 (1974). Here, the factual allegations of the complaint allege, at best, a violation of Judiciary Law § 14, which specifies when recusal is required.  The state courts, rather than the district

courts, are the ultimate arbiters of whether a violation of this state statutes has occurred and this action for injunctive relief cannot, therefore, be maintained.  <u>Pennhurst</u>, <u>supra</u>.

Moreover, the Eleventh Amendment bars all 42 U.S.C. § 1981 claims in federal court against the State defendants, absent its consent to such a suit or an express statutory waiver of immunity.  <u>Pennhurst</u>, <u>supra</u>; <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978); <u>Employees v. Department of Public Health</u>, 411 U.S. 279, 280 (1973). <u>Hosp. v. Halderman</u>, 465 U.S. 89, 97-100, 104 S.Ct. 955, 961 (1984).

Congress's authority to abrogate a State's Eleventh Amendment immunity is limited and must meet two requirements: (1) the statute must unequivocally express Congress's intent to abrogate the state's immunity, and (2) Congress must act "pursuant to a valid exercise of power." <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985).  <u>See also</u> <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 55 (1996).

Plaintiffs do not and can not point to any statute which expressly overrides the State's immunity from suit under 42 U.S.C. § 1981.  In fact, Congress did not enact an express override of the State's immunity in the Civil Rights Act.  <u>See</u>, <u>e.g.</u>, <u>Will v. Michigan Department of State</u>, 491 U.S. 58 (1989) and <u>Quern v. Jordan</u>, 440 U.S. 332, 343 (1979).  To be sure, all courts which have addressed the issue unanimously agree that the Eleventh Amendment bars all claims for relief against a state or state agency under

§ 1981.  See Yoonessi v. State University of New York, 56 F.3d 10, 12 (2d Cir. 1995), cert. denied, 516 U.S. 1075 (1996)(denying appeal of district court's dismissal of § 1981 claim on Eleventh Amendment grounds); Bland v. New York, 263 F.Supp.2d 526, 534(E.D.N.Y. 2003) (sovereign immunity also extends to claims under § 1981). Accordingly, the district court lacks subject matter jurisdiction to entertain plaintiffs' claims and this action should be dismissed as a matter of law.  Fed. R. Civ. P. 12 (b)(1).[4]

---

[4] Although plaintiffs only allege a claim for relief pursuant to 42 U.S.C. § 1981, to the extent plaintiffs also seek relief pursuant to 42 U.S.C. § 1983, such claims would also be barred by the Eleventh Amendment. Pennhurst State School & Hospital v. Halderman, supra. The Eleventh Amendment renders the State of New York, Administrative Judge Lippman and Justice Golia immune from suit under § 1983 as the State of New York has not consented to suit in federal court, and because no express override of State statutory authority has been enacted by Congress in association with § 1983. See Trotman v. Palisades Interstate Park Commission, 557 F.2d 35, 38-40 (2d Cir. 1977); and Quern v. Jordan, 440 U.S. 332, 343 (1979). Accordingly, any § 1983 claims against the State defendants would also be subject to dismissal pursuant to the Eleventh Amendment.

**C.   The Doctrine of Absolute Immunity**
     **Bars Plaintiff's Claim for Damages**

          To the extent plaintiffs are seeking monetary relief, the doctrine of absolute judicial immunity acts as a bar to such relief. A judge is not monetarily liable for acts done in the exercise of his or her judicial function.  Mireles v. Waco, 509 U.S. 9, 11 (1991); Stump v. Sparkman, 435 U.S. 349 (1978); Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999).   The only prerequisites to judicial immunity are that the judge not act in the "clear absence of all jurisdiction" and that he or she be performing a judicial act or one which is judicial in nature.  Mireles v. Waco, 509 U.S. at 11-12; Stump v. Sparkman, 435 U.S. at 359; Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2003).  A "clear absence of all jurisdiction" would be found if, for example a probate judge, with jurisdiction over only wills and estates, should try a criminal case.  On the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. See Brewer v. Village of Old Field, 311 F.Supp. 2d 390, 397 (E.D.N.Y. 2004) quoting Bradley v. Fisher, 80 U.S. 335, 352 (1872).

          The two prerequisites for absolute judicial immunity are met in this case.  First, Justice Golia a members of the State Judiciary had the full jurisdiction and authority to preside over and rule upon the issues raised in the foreclosure and sale proceeding.   See generally N.Y. Constitution, Article VI, §

7(establishing New York Supreme Courts as courts of "general original jurisdiction in law and equity"); N.Y. Jud.Law § 140-b(giving State supreme courts broad grant of general jurisdiction). Second, the decisions rendered by Justice Golia are judicial acts to which immunity attaches. <u>Mireles v. Waco</u>, 509 U.S. at 11-12.

Moreover, a plaintiff's conclusory allegations of conspiracy, bias and bad faith do not overcome a judge's absolute immunity from damages. <u>Mireles v. Waco</u>, 502 U.S. at 14; <u>Fariello v. Campbell</u>, 860 F.Supp. 54, 67-69 (E.D.N.Y. 1994). Indeed, even if the State court decisions were later ruled to be improper, erroneous or incorrect on appeal monetary liability will not lie. <u>Fields v. Soloff</u>, 920 F.2d 1114, 1119 (2d Cir. 1990). As set forth in <u>Stump</u>, 435 U.S. at 359, immunity is not forfeited because a judge has committed "grave procedural errors." <u>Brewer v. Village of Old Field</u>, 311 F.Supp.2d 390, 397 (E.D.N.Y. 2004).

Accordingly, Justice Golia is absolutely immune from any claim by the plaintiff for money damages.

14

**POINT II**

**Younger Abstention Bars Plaintiffs'
Claims for Declaratory and Injunctive
Relief**

Abstention principles described in Younger v. Harris, 401 U.S. 37 (1971) also bar plaintiffs' claim for declaratory and injunctive relief since plaintiffs should have sought review of their alleged federal questions on a direct appeal in the state courts and failed to do so. Kirshner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000)(Younger requires dismissal of claims for declaratory and injunctive relief). In Spargo v. NY State Commission on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003), the Second Circuit set forth the three-part test for determining whether Younger abstention is appropriate: (1) where there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. See also Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001). All three prerequisites for Younger abstention are present here.

First, it is undisputed that there is an ongoing foreclosure proceeding pending in the New York State courts. Plaintiffs never appealed the state appellate court orders. The United States Supreme Court has made clear that a state court proceeding is deemed "ongoing" for Younger purposes until all

15

appellate remedies are exhausted.  Huffman v. Pursue, Ltd., 420 U.S. 592, 608-09 (1975)(a federal plaintiff must exhaust all available state appellate remedies before seeking relief in federal court); Kirshner v. Klemons, 225 F.2d at 234 (would-be federal plaintiffs "must first exhaust all available state appellate remedies" unless other Younger prerequisites are not met); Neustein v. Orbach, 732 F.Supp. 333, 339 (E.D.N.Y. 1990).   Indeed, federal plaintiffs cannot avoid a Younger dismissal by failing to take advantage of the state appellate remedies available to them.  This is especially true where, as here, plaintiffs cannot point to any state procedural law which would bar presentation of the alleged federal claims on appeal.  Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 14 (1987), quoting Moore v. Sims, 442 U.S. 415, 432 (1979).   Thus, even if a new constitutional claim is now asserted in the district court, plaintiffs' "failure to avail [themselves] of the state courts ... should not give [them] access to federal court to obtain injunctive relief."  Donkor v. City of New York Human Resources Admin., 673 F. Supp. 1221, 1227 (S.D.N.Y. 1987); see also Pennzoil Co. v. Texaco Inc., 481 U.S. at 16, n.16 (plaintiffs "cannot escape Younger abstention by failing to assert its state remedies in a timely manner).  Accordingly, the State Court proceedings are ongoing for Younger purposes and the first prerequisite for abstention is met.

     Second, the substantial state interest necessary for the Younger abstention doctrine is also present.  As "the states have

16

an important interest in administering certain aspects of their judicial systems." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 12-13(1987).   Indeed, the Supreme Court recognized the significant state interest "in protecting 'the authority of the [state's] judicial system, so that its orders and judgments are not rendered nugatory.'" Pennzoil, 481 U.S. at 13, n.12 quoting Judice v. Vail, 430 U.S. 327 at 336, n.12 (1977).

Moreover, the federal courts have recognized the traditional strong interest of a state in having its courts resolve a civil action which requires an analysis and interpretation of state law. See generally Glen 6 Assoc., Inc. V. Dedaj, 770 F.Supp. 225, 228 (S.D.N.Y. 1991); Temple of the Lost Sheep v. Abrams, 761 F. Supp. 237, 243 (E.D.N.Y. 1989).   The significant state interest necessary to invoke Younger abstention is present.   As it is clear from the face of the complaint that by this action, the fundamental workings of New York State's judicial system -- the ability to enforce court orders -- would potentially be limited by the relief requested of this court by plaintiffs.

The third prerequisite for abstention under Younger  -- a state court opportunity to vindicate federal rights -- is present here as well.   See Judice v. Vail, 430 U.S. at 335.   Indeed, it has long been held that the state courts are competent to hear and fully resolve a plaintiff's constitutional challenge:

17

> "[T]here is no reason to assume that ..
> [plaintiff's] constitutional rights will not be
> protected by the Appellate Division ..., or, if
> further review becomes necessary, by the New
> York Court of Appeals."

Turco v. Monroe County Bar Association, 554 F.2d 515, 520 (2d Cir. 1977), cert. denied, 434 U.S. 834 (1977) quoting Erdman v. Stevens, 458 F.2d 1205, 1211(2d Cir. 1972); Mason v. Dept. Disciplinary Committee, Appellate Division, 894 F.2d 512, 515 (2d Cir. 1990). Here, any of plaintiffs' alleged constitutional challenges to the outcome of the state court proceeding could have been reviewed on direct appeal. Plaintiffs had the opportunity to obtain review of the Court's challenged actions and vindicate their alleged constitutional rights. By electing not to utilize these state court remedies plaintiffs do not obtain the right to now bring their state court challenge to Federal Court.

Where, as here, the requirements of Younger are met, abstention is mandatory. Schlagler v. Phillips, 166 F.3d 439 (2d Cir. 1998); Hansel v. Town Court of Springfield, 56 F.3d 391, 394 (2d Cir. 1995). All of plaintiffs' claims for injunctive and declaratory relief should, therefore, be dismissed.

## CONCLUSION

**FOR THE FOREGOING REASONS STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT SHOULD BE GRANTED IN ITS ENTIRETY.**

**Dated:** New York, New York
June 12, 2006

Respectfully submitted,

ELIOT SPITZER
Attorney General of the
 State of New York
<u>Attorney for State Defendants</u>
By:

      /S/
_____

LISA GHARTEY (LG-4601)
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8548/8610

LISA GHARTEY
Assistant Attorney General
 <u>of Counsel</u>

19

# **Table of Contents**

**Page**

Table of Authorities  . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement . . . . . . . . . . . . . . . . . . .  1

Statement of Facts  . . . . . . . . . . . . . . . . . . . .  3

The Foreclosure Proceedings in Supreme Court, Queens County . .  3

Federal Complaint . . . . . . . . . . . . . . . . . . . . .  7

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . .  8

POINT I - THIS COURT LACKS SUBJECT MATTER
          JURISDICTION OVER PLAINTIFFS'
          CLAIMS AGAINST THE JUSTICES   . . . . . . . . . . .  8

          A. The Rooker-Feldman Doctrine Precludes
             the District Court from Having
             Jurisdiction Over This Action  . . . . . . . . .  8

          B. Plaintiffs' Claims are Barred by the
             Eleventh Amendment Immunity To The
             United State Constitution  . . . . . . . . . .  10

          C. The Doctrine of Absolute Immunity
             Bars Plaintiffs' Claim for Damages . . . . . . .  13

POINT II - YOUNGER ABSTENTION BARS PLAINTIFF'S
           CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF . . .  15


CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .  19

## <u>Table of Authorities</u>

**Cases**                                                               **Page**

<u>Allen v. McCurry</u>,
    449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . .   17

<u>Atlantic Coast Line R. Co. v. Brotherhood of Locomotive
Engineers</u>,
    398 U.S. 281, 286 (1970) . . . . . . . . . . . . . . . 7

<u>Appeals v. Feldman</u>,
    460 U.S. 462, 476  n. 16 (1983) . . . . . . . . . . . 7

<u>Bradley v. Fisher</u>,
    80 U.S. 335, 352 (1872) . . . . . . . . . . . . . . . 11

<u>Brewer v. Village of Old Field</u>,
    311 F. Supp. 2d 390 (E.D.N.Y. 2004) . . . . . . . . . 11

<u>Campbell v. Greisberger</u>,
    80 F.3d 703 (2d Cir. 1996) . . . . . . . . . . . . . 8

<u>Clark v. Department of Correctional Services</u>,
    564 F. Supp. 787 (S.D.N.Y. 1983) . . . . . . . . . . 17

<u>Cobb v. Rocco, et al.</u>,
    352 F.3d 79 (2d Cir. 2003) . . . . . . . . . . . . . 17

<u>Daniel v. Safir</u>,
    135 F. Supp. 2d 367 (E.D.N.Y. 2001) . . . . . . . . . 10

<u>Davis v. New York</u>,
    316 F.3d 93 (2d Cir. 2002) . . . . . . . . . . . . . 9

<u>District of Columbia Court of Appeals v. Feldman</u>,
    460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . 2,7

<u>Donkor v. City of New York Human Resources Admin.</u>,
    673 F. Supp. 1221 (S.D.N.Y. 1987) . . . . . . . . . . 14

<u>Erdman v. Stevens</u>,
    458 F.2d 1205, 1211(2d Cir. 1972) . . . . . . . . . . 16

Exxon Mobil Corp. v. Saudi Basic Industries Corp.,
    __ U.S. ___, 125 S. Ct. 1517 (2005) . . . . . . . . . . . 7,8,9

Fariello v. Campbell,
    860 F. Supp. 54 (E.D.N.Y. 1994) . . . . . . . . . . . . 12

Fields v. Soloff,
    920 F.2d 1114 (2d Cir. 1990) . . . . . . . . . . . . . 12

Ford v. Moore,
    237 F.3d 156 (2d Cir. 2001) . . . . . . . . . . . . . . 20

Gentner v. Shulman,
    55 F.3d 87 (2d Cir. 1995) . . . . . . . . . . . . . . . 8

Glen 6 Associate, Inc. V. Dedaj,
    770 F. Supp. 225 (S.D.N.Y. 1991) . . . . . . . . . . . 15

Great America Federal Sav. & Loan v. Novotny,
    442 U.S. 366 (1979) . . . . . . . . . . . . . . . . . . 19

Grieve v. Tamerin,
    269 F.3d 149 (2d Cir. 2001) . . . . . . . . . . . . . . 13

Hachamovitch v. DeBuono,
    159 F.3d 687 (2d Cir. 1998) . . . . . . . . . . . . . . 8

Hansel v. Town Court of Springfield,
    56 F.3d 391 (2d Cir. 1995) . . . . . . . . . . . . . . 16

Huffman v. Pursue, Ltd.,
    420 U.S. 592 (1975) . . . . . . . . . . . . . . . . . . 14

Huminski v. Corsones,
    396 F.3d 53 (2d Cir. 2003) . . . . . . . . . . . . . . 11

Judice v. Vail,
    430 U.S. at 335 . . . . . . . . . . . . . . . . . . . . 15

Kentucky v. Graham,
    473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . 9

Kirshner v. Klemons,
    225 F.2d at 234 . . . . . . . . . . . . . . . . . . . . 14

Kirshner v. Klemons,
    225 F.3d 227 (2d Cir. 2000) . . . . . . . . . . . . . . 13

i

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991) . . . . . . . . . . . . . . . 3

LeBlanc-Sternberg v. Fletcher,
    67 F.3d 412 (2d Cir. 1995) . . . . . . . . . . . . . . 19

Mason v. Department Disciplinary Committee, Appellate Division,
    894 F.2d 512 (2d Cir. 1990) . . . . . . . . . . . . . . 16

Miagra v. Warren City School District Board Of Education,
    465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . 17

Mireles v. Waco,
    502 U.S. at 14 . . . . . . . . . . . . . . . . . . 11

Mireles v. Waco,
    509 U.S. 9 (1991) . . . . . . . . . . . . . . . . 11, 12

Montero v. Travis,
    171 F.3d 757 (2d Cir. 1999) . . . . . . . . . . . . . . 11

Moore v. Sims,
    442 U.S. 415, 432 (1979) . . . . . . . . . . . . . . . . 14

Neustein v. Orbach,
    732 F. Supp. 333 (E.D.N.Y. 1990) . . . . . . . . . 14, 18

Pennhurst State School & Hospital v. Halderman,
    465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . . 9

Pennzoil Co. v. Texaco Inc.,
    481 U.S. 1 (1987), . . . . . . . . . . . . . . . . 14, 15

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923) . . . . . . . . . . . . . . . . . 2,7

Ryan v. New York Telephone Company.,
    62 N.Y.2d 494 (1984) . . . . . . . . . . . . . . . . . 17

Sabba v. Chen, et al.,
    Queens County Index No. 8220/90 . . . . . . . . . . . . 1

Sabba v. Wu, et al., Supreme Court Queens County,
    Index No. 8220/90 . . . . . . . . . . . . . . . . . . 2

Schlagler v. Phillips,
    166 F.3d 439 (2d Cir. 1998) . . . . . . . . . . . . . . 16

Spargo v. NY State Commission on Judicial Conduct,
    351 F.3d 65 (2d Cir. 2003) . . . . . . . . . . . . . . . 13

Spencer v. Casavilla,
    903 F.2d 171 (2d Cir. 1990) . . . . . . . . . . . . . . 19

Stump v. Sparkman,
    435 U.S. 349 (1978) . . . . . . . . . . . . . . . 11, 12

Temple of the Lost Sheep v. Abrams,
    761 F. Supp. 237 (E.D.N.Y. 1989) . . . . . . . . . . 15

Thomas v. Roach,
    165 F.3d 137 (2d Cir. 1999) . . . . . . . . . . . . . . 20

Turco v. Monroe County Bar Association,
    554 F.2d 515 (2d Cir. 1977), cert. denied, 434 U.S. 834
    (1977) . . . . . . . . . . . . . . . . . . . . . . . 16

United Board of Carpenters & Joiners of America, Local 610, AFL-CIO
v. Scott,
    463 U.S. 825 (1983) . . . . . . . . . . . . . . . . 19,20

Will v. Michigan Department of State Police,
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . 10

Younger v. Harris,
    401 U.S. 37 (1971) . . . . . . . . . . 2, 13, 14, 15, 16

Zuckerman v. Appellate Division,
    421 F.2d 625, 626 (2d Cir. 1970) . . . . . . . . . . . 10

**STATUTES**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . 2, 10

Fed. R. Evid. 201(b)(2) . . . . . . . . . . . . . . . . . . 3

N.Y. Jud.Law § 140-b . . . . . . . . . . . . . . . . . . 12

11 U.S.C. § 1322(b)(5) . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1257 . . . . . . . . . . . . . . . . . . . 7, 8

42 U.S.C. §§ 1983 . . . . . . . . . . . . . . . . . . . 1,6

42 U.S.C. § 1985 . . . . . . . . . . . . . . 1, 2, 6, 18, 19

iii

Chapter 13   . . . . . . . . . . . . . . . . . . . .   3, 4

N.Y. Constitution, Article VI, §7 . . . . . . . . . . . . .   11